[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this matter the plaintiff seeks damages from the defendant for monies claimed to have been derived from a Partnership involving the merchandising of trademarks owned by the United States Polo Association.
According to the plaintiff Michael Silverstein, he had been friendly with the defendant Robert Mintz for a number of years with both individuals being in the merchantile business. The plaintiff in 1996 through one Donna Merhib became aware of an opportunity to obtain an agreement from the United States Polo Association for use of certain of its trademarks or logos. Because of the plaintiff's experience in sales and marketing of clothing he felt that this represented the possibility of a profitable venture. He approached the defendant with the view of perhaps forming a partnership between the two of them to pursue the idea. The defendant and the plaintiff after several meetings agreed to proceed with the idea. The two of them then met with an individual named Meryle Jenkins who was in charge of overseeing licensing for the United States Polo Association. On February 14, 1997 the license was obtained (P. Ex. 2) in the name of Quade, Inc. which was a corporation solely owned by the defendant Mintz. The licensing agreement provided for certain periodic payments to be made to the U.S. Polo Association in exchange for use of the logo. According to the plaintiff, the license was in the name of the defendant's corporation because of certain financial problems with the IRS which the plaintiff was experiencing and which precluded his ownership of reachable assets. The immediate obstacle facing the partnership was obtaining money to make the periodic payments called for in the licensing agreement. The financial aspects of the operation were primarily the responsibility of the defendant while the sales promotion was apparently the forte of the plaintiff. The defendant in due course entered into an arrangement with an entity called Rocky Apparel as a financing source and the licensing agreement was consummated as indicated above in February 1997. The defendant was now engaged in activities promoting the partnership objectives full-time while the plaintiff was contributing neither time nor money. (T. p. 53). The original understanding which was completely oral and never reduced to writing was an equal sharing of expenses and profits, although the defendant was going to be responsible for the royalty payments as Quade, Inc., his corporation, had executed the licensing agreement. The defendant testified that he was concerned about this exposure and wanted some assurances from the plaintiff that his participation in the financial obligations would be forthcoming. This was never obtained. (T. p. 57). In April of 1997 there had not yet been any sales utilizing the logo and consequently no profits to apply towards the obligations which were CT Page 3055 ongoing. The plaintiff was asked if he would devote time to the enterprise to move it along but he was unwilling to give up any time from his regular employment as the prospects were too uncertain and he couldn't withstand any loss of income. (T. p. 59). At this point, May 1997, Rocky Apparel decided to withdraw its financing and the defendant at this juncture insisted that the plaintiff contribute to the partnership in order to enable it to survive. The plaintiff refused to assist in any way. The defendant then asked the plaintiff if he was "in or out." The plaintiff's response according to the defendant was "unfortunately I can't help you now. I'm out." (T. p. 172). (Also see T. p. 20 for plaintiff's version of the same conversation which appears substantially similar.) The partnership was terminated at that point both by operation of the plaintiff's declaration that he was "out" and also because of the plaintiff's failure to assume any meaningful obligations to further the aims and objectives for which the partnership was formed.
Meryle Jenkins, the president of the U.S. Polo Association in his deposition recalls that the plaintiff in June 1997 told him that he, the plaintiff, decided to get out of the venture. (See Jenkins deposition p. 17-18.) In any event, that was the end of the plaintiff's involvement with the partnership by mutual agreement. There had never been any partnership agreement aside from an oral arrangement to share expenses and profits and the only expense was $4800 for legal fees toward which he contributed $2400. (Tr. p. 49).
At this point the only objectives of the partnership that had been accomplished so far as the record reveals was the acquisition of the right to use the logo of the U.S. Polo Association and the fees payable to the licensor were paid out of financing obtained by the defendant through the defendant's corporation Quade, Inc. At the time of the breakup of the partnership this financing was being withdrawn. (See Tr. p. 54-55). There is nothing in the record to suggest that there were any assets of the partnership apart from the logo of which the plaintiff would be entitled to share at the time of the plaintiff's election to withdraw from the association in June 1997 and that asset was in jeopardy because of the required payments. Whatever the defendant was able to accomplish with the license that Quade, Inc. obtained from U.S. Polo Association subsequent to the dissolution of the partnership is of no consequence as the plaintiff was no longer involved.
Accordingly, judgment may enter on the complaint in favor of the defendant.
As to the counterclaim advanced by the defendant, the record does not disclose that aside from the matter of legal fees previously referred to for which the plaintiff paid his share, no demand was ever made upon the CT Page 3056 plaintiff for any contributions to defray the defendant's expenditures of time or money prior to the breakup of the partnership. As has been indicated above what occurred thereafter is of no consequence as the plaintiff was no longer involved.
Judgment may enter on the counterclaim for the plaintiff.
George W. Ripley II Judge Trial Referee